UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RANDALL MARTIN, | Case No. 1:08-cv-301 |
| Plaintiff, | Judge S. Arthur Spiegel |
| | Magistrate Judge Timothy S. Black |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability and disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 20-29) (ALJ's decision)).

**I.**

On March 2, 2005, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of February 25, 2005, due to a history of Crohn's disease, hypertension, diabetes, abdominal and epigastric pain, upper and lower extremity weakness, chest pain, and vison problems. (Tr. 135-56, 158-59, 172-74, 176-81, 190-91, 302-04).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of his claims on the state agency level, Plaintiff requested a hearing *de novo* before an ALJ.  A hearing was held on July 9, 2007, at which Plaintiff appeared with counsel and testified.  (Tr. 20).  A vocational expert, Mr. Robert E. Breslin, was also present and testified.  (*Id.*)

On July 27, 2007, the ALJ entered his decision finding Plaintiff not disabled.  (Tr. 17-29).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision subject to judicial review.  (Tr. 6-16, 311-13).

At the time of the ALJ's decision, Plaintiff was a 45 year old male with an associate's degree.  (Tr. 80).  He had past relevant work experience as a warehouse worker, a delivery person, and a proofreader.  (*Id.*)

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since February 25, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: insulin dependent diabetes mellitus with neuropathy; abdominal discomfort; and a pain disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of this decision.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry/push/pull 10 pounds occasionally and five pounds frequently. He can stand and/or walk for two hours in an eight-hour workday, but can do so for no longer than 15 minutes at a time. He must then be allowed to sit for five minutes. He can stoop, kneel, crouch, and climb ramps and stairs only occasionally. He is unable to crawl, balance, or operate controls with either lower extremity. He is unable to perform work requiring the forceful use of either lower extremity. He is unable to walk on grossly uneven terrain, to work at unprotected heights, or to work around hazardous machinery. He needs an assistive device for ambulation. The claimant is able to understand, remember, and carry out detailed, but not complex instructions. He cannot interact with the general public more than occasionally.

7. The claimant is capable of performing past relevant work as a proofreader. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. The claimant has not been under a disability, as defined in the Social Security Act, from February 25, 2005, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 22-29).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to a period of disability or DIB. (Tr. 29).

On appeal, Plaintiff argues that: (1) the ALJ erred in determining the Plaintiff's RFC; (2) the ALJ erred in finding that Plaintiff was not disabled on the basis of pain; (3) the ALJ erred in not finding Plaintiff's eye impairment severe; and (4) the ALJ erred

in determining that Plaintiff could work under his RFC. Upon careful review, the undersigned finds Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, Plaintiff maintains that the ALJ erred in determining his residual functioning capacity ("RFC").[2]

The record reflects that:

In January 2003, Plaintiff was diagnosed with diabetic neuropathy.[3] (Tr. 303). Despite taking medication, his diabetes has been out of control with glucose levels ranging between 152 and 500[4] since the alleged onset date. (Tr. 228, 233, 239, 245, 299). HgA1c levels have consistently been elevated as well, ranging from 7.5 to 10.1[5] since 2006. (Tr. 233, 244, 247, 252, 258, 297, 300).

Secondary to diabetes, Plaintiff suffered from burning pains in his feet which prevented him from functioning, standing, or walking for any length of time. (Tr. 256).

---

[2] A claimant's RFC is the most an individual can still do despite his limitations. An RFC is assessed based on all of the relevant evidence in the record.

[3] Diabetic neuropathies are neuropathic disorders that are associated with diabetes mellitus. These conditions are thought to result from diabetic microvascular injury involving small blood vessels that supply nerves and affect all peripheral nerves including pain fibers, motor neurons, and autonomic nerves. It can therefore effect all organs and systems since all are innervated.

[4] Typical glucose levels for a diabetic adult range from 90-130.

[5] HgA1c is a form of hemoglobin used primarily to identify the average plasma glucose concentration over prolonged periods of time. In general, the reference range (for a healthy adult) is between 4 - 5.9.

By 2006, Plaintiff required a cane to walk on occasion. (*Id.*) Plaintiff also experienced numbness and a loss of dexterity and grip strength in his hands to the point that he dropped small items. (Tr. 254). In 2007, he began to suffer from vision problems, including loss of depth perception, and a burning sensation in his eyes. (Tr. 325-48).

Dr. Robert Gerke was Plaintiff's treating doctor since 1994. (Tr. 227-241, 251-53, 257-59, 295-300). Dr. Gerke referred Plaintiff to Riverhills Neurology in 2003 to treat his hand and leg symptoms. Dr. Michael Schmerler found decreased pin sensation, light touch, vibration toward the knees, and antalgic gait. (Tr. 159-160).

In July 2004, Dr. Gerke referred Plaintiff to Dr. Victor Abler, another neurologist. (Tr. 161-64). An EMG revealed evidence of chronic mild to moderate "polyneuropathy with demyelinating features." (Tr. 161-164). Upon examination, Dr. Abler found decreased pinprick sensation in the lower extremities, diminished vibration sensation in both toes, and leg weakness. (Tr. 159). Dr. Abler diagnosed diabetic peripheral neuropathy. (*Id.*)

In an RFC completed on May 18, 2005, Dr. Gerke diagnosed Plaintiff with diabetic neuropathy with symptoms of severe foot pain. (Tr. 222). Dr. Gerke opined that Plaintiff could not stand long enough to lift, could be on his feet a total of less than one hour in an eight-hour workday, and had macular[6] multiple non-exertional restrictions.

---

[6] Macular degeneration is a medical condition which results in a loss of vision in the center of the visual field (the macula) because of damage to the retina. It is a major cause of blindness and can make it difficult or impossible to read or recognize faces.

(Tr. 222-23). Dr. Gerke concluded that Plaintiff could not perform any job due to extremely limited mobility and limited ability to stand. (Tr. 225). He also found that Plaintiff could not simultaneously work and take his pain medicine. (*Id.*)

In July 2006, Plaintiff returned to Riverhills. Upon examination, Dr. Schmerler found loss of sensation in the lower extremities. (Tr. 265). Reflexes were diminished in both the arms and legs. (*Id.*) Dr. Schmerler diagnosed idiopathic progressive polyneuropathy and diabetic neuropathy and prescribed Cymbalta. (Tr. 262-66).

In May 2007, Plaintiff saw Dr. Barnhart, a podiatrist. Dr. Barnhart found that Plaintiff suffered from painful ambulation and standing secondary to "severe diabetic neuropathy." (Tr. 190-91, 302-04).

Plaintiff was referred to Dr. Stewart Krug, an opthamologist, for his eye problems. Dr. Krug diagnosed inoperable macular degeneration. (Tr. 285-88).

Dr. Gerke completed another RFC on June 26, 2007 and diagnosed Plaintiff with diabetic neuropathy. (Tr. 306). He opined that Plaintiff's pain would constantly interfere with attention and concentration and that Plaintiff was incapable of even low stress jobs. (Tr. 307). Exertionally, Dr. Gerke limited Plaintiff to lifting 0-10 pounds, standing 5 minutes at a time, walking less than one city block without rest or severe pain, and sitting at one time for two hours. (Tr. 307-09). Overall Plaintiff could sit, stand, and walk only 6 hours in an 8-hour workday. (Tr. 308). Dr. Gerke further opined that Plaintiff would need unscheduled breaks every hour for about ten to fifteen minutes before returning to

work and required a cane when standing or walking. (Tr. 308-09). Finally, Dr. Gerke stated that Plaintiff would likely be absent from work more than 4 days per month. (Tr. 310). The vocational expert ("VE") testified that this RFC was disabling. (Tr. 357).

At the hearing, Plaintiff testified that his feet and legs hurt all time. (Tr. 330). When he lifted too much, the excess weight made his feet and legs feel like "it's taking my breath if I lift something." (Tr. 335). He further testified that he could not do a job with any significant lifting because the medication he took for pain, "dummies up my brain" and "I can't concentrate." (Tr. 342-43).

Plaintiff also had problems with his vision. (Tr. 347). To read he had to put on his bifocals and use a magnifying glass. (*Id*.) He could not see the words on a computer screen or keyboard. (*Id*.) Plaintiff also testified that he "drove rarely" and that Dr. Gerke told him to consider giving up driving due to his vision loss. (Tr. 346).

In his decision, the ALJ found that Plaintiff suffered from severe insulin dependent diabetes mellitus with neuropathy, abdominal discomfort, and a pain disorder, but did not meet or equal any Listing. (Tr. 20-29). The ALJ's RFC limited Plaintiff to essentially sedentary work with certain non-exertional limitations. (*Id*.) The ALJ determined that Plaintiff could perform his past work and thus denied the claim. (*Id*.)

In determining an RFC, the Social Security Administration has established a hierarchy of medical opinions. The regulations clearly state that a treating doctor's opinion must be given "controlling weight" if "well supported" by objective evidence. 20

C.F.R. § 1527 (d)(2). More weight is generally given to treating sources because they can provide a detailed, longitudinal picture of one's medical impairments and may bring perspective to the individual examinations such as consultative examinations. 20 C.F.R. § 404.1527 (d)(2). Because treating doctors have the best perspective of a plaintiff's medical impairments, the Commissioner must give great weight to their findings and opinions. 20 C.F.R. § 416.927(d)(2).

These principles apply to RFC determinations. In the Sixth Circuit, RFC opinions of treating doctors that are supported by sufficient medical data must be given controlling weight or complete deference. *Id*.; *Hurst v. Schweiker*, 725 F.2d 53 (6th Cir. 1984); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365 (6th Cir. 1991); *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987). Because the treating physician has the best opportunity to examine and observe the patient, his opinions are entitled to greater weight than the opinions of any non-examining physician. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066 (6th Cir. 1992); *Allen v. Califano* (6th Cir 1980) 613 F.2d 139; *Bogle v. Sullivan*, 998 F.2d 342 (6th Cir. 1993).

The regulations provide a list of acceptable reasons[7] to reject a treating source's

---

[7] Those reasons include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4, at *8. *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (noting that an ALJ should consider these factors).

opinion, such as the nature and length of the treating relationship and the source's medical specialty. 20 C.F.R. §§ 404.1527(d)(1)-(6); 416.927(d)(1)-(6). The ALJ does not reject Dr. Gerke's opinion for any of these "acceptable" reasons.

Dr. Gerke has been Plaintiff's treating physician since 1994. On three separate occasions, he rendered disabling opinions on Plaintiff's behalf. In early 2005, Dr. Gerke found that Plaintiff could not sit or stand for prolonged periods of time and was unable to work while on pain medications. (Tr. 187-88). In May 2005, he opined that Plaintiff could not perform any job due to extremely limited mobility and limited ability to stand. (Tr. 221-25). Finally, in 2007, he gave RFC ratings that the vocational expert ("VE") deemed disabling. (Tr. 222, 306). All of these opinions were supported by objective medical evidence.

Given the persistent elevation of Plaintiff's glucose and HgA1c levels, his diabetes has been uncontrolled since his onset date. (Tr. 228, 233, 239, 245, 299). An EMG proved the existence of a moderate lower extremity polyneuropathy and demyelinating disease, supporting not only that Plaintiff would have difficulty with standing and walking but would also have to constantly work in pain. (Tr. 161-64). Clinically, the neurologists noted diminished lower extremity sensation, absent reflexes in the upper and lower extremities and lower extremity weakness. (Tr. 159-60). Accordingly, there was ample objective evidence to support Dr. Gerke's disabling ratings.

Because of the objective medical evidence and Dr. Gerke's long-term treating relationship with his patient, the ALJ should have given his opinions controlling weight.

By failing to do so, the ALJ committed reversible error. Additionally, the ALJ did not proffer any of the requisite reasons to reject Dr. Gerke's RFC. *See* 20 C.F.R. §§ 404.1527(d)(1)-(16). Instead, the ALJ rejected Dr. Gerke's 2005 opinion because it was "equivocal." While Dr. Gerke did limit Plaintiff more severely in 2007 than he did in 2005, he rendered Plaintiff disabled in all three reports. Moreover, the 2007 report was more detailed than the 2005 reports. Accordingly, the undersigned finds that all of Dr. Gerke's disabling opinions were consistent in terms of disability. To the extent that the ALJ rejected Dr. Gerke's opinions as equivocal, he erred.

Furthermore, by finding the RFC's equivocal, the ALJ did not consider the possibility that Plaintiff's condition worsened between 2005 and 2007. Given that Plaintiff's HgA1c level was at its worst in 2007, and that the reflex and upper extremity abnormalities first appeared in 2006, Plaintiff was clinically worse when Dr. Gerke completed the 2007 RFC. Considering the progressive nature of neuropathy, this was not unreasonable.

Finally, the ALJ rejected Dr. Gerke's 2007 RFC because he claimed that the only support he provided for the assessment was Plaintiff's pain. However, the record supports the fact that Dr. Gerke based the 2007 RFC on both Plaintiff's pain and objective medical findings, including the EMG results and clinical loss of sensation. (Tr. 294-300, 305-310).

Based on this evidence, the ALJ impermissibly formulated his own RFC. When an ALJ makes a medical determination it must be based upon medical evidence. *Rosado v.*

*Sec'y of Health & Human Servs.*, 807 F.2d 292 (1st Cir. 1986). An ALJ, as a layperson, may not substitute his own opinions for those of the expert doctors. *Brown v. Apfel*, 174 F.3d 59 (2nd Cir. 1999); *Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996). In this case, the ALJ's RFC was not based upon any evidence of record, much less substantial evidence. In addition to rejecting Dr. Gerke's RFCs, the ALJ also rejected other RFC's of record, including those provided by state agency physicians. (Tr. 27). Therefore, the ALJ's RFC is not supported by substantial evidence, and, by law, this constitutes reversible error.

**B.**

For his second assignment of error, Plaintiff claims that the ALJ erred in finding that he was not disabled on the basis of pain.

Consistent complaints of pain are objective evidence. *McCray v. Barnhart*, 331 F. Supp. 2d 772, 100 Soc. Sec. Rep. Serv. 33 (S.D. Iowa 2004). The Sixth Circuit uses a two-prong test to evaluate a social security claimant's assertions of disabling pain.

> "First we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

*Felisky*, 35 F.3d at 1038-39. Plaintiff's subjective testimony, supported by medical evidence that satisfies the pain standard, is itself sufficient to support a finding of disability. (*Id.*) Therefore, if a plaintiff testifies to disabling pain and satisfies the two part pain standard, he must be found disabled unless that testimony is properly

-12-

discredited.  20 C.F.R. § 404.1520(a)-(f); Social Security Act, § 223 (d)(1)(A).  *Fleming v. Earnhart*, 333 F. Supp. 2d 1221 (N.D. Ala. 2004).

The record is replete with Plaintiff's subjective complaints of pain.  (Tr. 154-156, 158-160, 178, 187-88, 218, 222, 265, 268, 272, 281, 295, 303-04).  Plaintiff indicated that his pain sometimes reached a level of 10 on a scale of 1-10.[8]  (Tr. 109).  The ALJ found that pain of 10 would require emergency hospitalizations and noted that the record did not contain any evidence of emergency hospitalizations due to neuropathy.  (Tr. 27).  Based upon this statement (which is not supported by any medical evidence), the ALJ concluded that Plaintiff was not entirely credible, despite the fact that the ALJ concluded that Plaintiff's chronic pain was a severe impairment.  (Tr. 22-24).  However, the regulations clearly state that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."  SSR 96-7p.  "Because symptoms sometimes suggest a greater severity of impairment than can be shown by making the objective medical evidence alone, careful consideration must be given to any available information about symptoms."  *Id.*

Additionally, the record is replete with further evidence of Plaintiff's pain. Dr. Gerke prescribed Plaintiff Darvocet, Neurontin, and Hydrocodone for his pain.  (Tr.

---

[8] Plaintiff testified "I don't have any life.  I'm sick all the time, I have to lay down all the time.  I can't go to the movies, I can't do to the grocery store.  I can't do the things normal people do.  I can't even take a walk in the park with my wife.  I haven't had a sex life in 2 years. I'm just too miserable and I'm in too much pain."  (Tr. 348).

182-88, 294-300, 305-10). In his letter to the Administration, Dr. Gerke stated: "I feel life would be very difficult for the patient to perform work related activity as he cannot stand or sit for long periods of time due to his pain. The medication he takes for pain is sedating and does affect the patient's job performance." (Tr. 188). This Court finds it unlikely that doctors would prescribe drugs without satisfying themselves as to the validity of the complaints of pain. Accordingly, Plaintiff produced medical evidence of underlying impairments consistent with his subjective complaints.

Therefore, the ALJ erred by rejecting Plaintiff's complaints of pain.

## C.

For his third assignment of error, Plaintiff maintains that the ALJ erred in not finding his eye impairment severe.

For purposes of establishing disability, social security defines a severe impairment as "any medically determinable impairment that would interfere with a person's ability to perform the full range of exertional and non-exertional work-related activities." Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

At the hearing, Plaintiff testified that he must use a magnifying glass to read and his doctor recommended he consider not driving. (Tr. 347). Moreover, Dr. Krug examined Plaintiff on April 15, 2007 and diagnosed macular degeneration. (Tr. 285-288). The ALJ found this was a non-severe impairment because there was no evidence that it caused the visual difficulties Plaintiff alleged. (Tr. 24). However, macular degeneration causes the loss of clear central vision critical for reading and greatly affects quality of life.

Therefore, Plaintiff's diagnosis supports his allegations of visual difficulties and the ALJ failed to substantiate his finding that Plaintiff's visual difficulties were not credible.

Accordingly, the ALJ erred in not finding Plaintiff's eye impairment severe.

## D.

For his fourth and final assignment of error, Plaintiff claims that the ALJ erred in determining that he could work under his RFC.

When an ALJ gives a hypothetical question to a vocational expert ("VE"), it must contain all of the relevant RFC restrictions. *Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994). In the instant case, the ALJ found that Plaintiff had a severe psychological pain disorder. (Tr. 22). Additionally, the ALJ found that Plaintiff had moderate difficulties in social functioning and concentration, persistence, and pace, and that Plaintiff could not interact with the general public or co-workers more than occasionally. (Tr. 22, 25). However, the ALJ did not include all of these restrictions in his hypothetical to the VE. (Tr. 352-54). The only psychological impairment the ALJ gave to the VE was a limitation against complex instructions. (Tr. 353).

Based on the ALJ's hypothetical, the VE testified that Plaintiff could perform his past work and other sedentary jobs. (Tr. 353). In denying the claim, the ALJ relied upon this testimony, holding that Plaintiff could perform his past work and the other sedentary jobs that the VE described. (Tr. 28-29). By law this was reversible error. The VE never heard all of Plaintiff's psychological RFC impairments from the ALJ. Therefore, it was improper for the ALJ to rely upon the VE's testimony that Plaintiff could perform other

-15-

work. In fact, on cross examination, the VE testified that if the Plaintiff had restrictions in interacting with the general public and co-workers more than occasionally, the jobs he said Plaintiff could perform would not be ideal. (Tr. 356). Additionally, the VE testified that none of the jobs he recommended would not allow Plaintiff to elevate his feet or take unscheduled breaks, and that he could not miss more than one or one and a half days each month. (Tr. 357). Based on the objective medical evidence, Plaintiff would not be able to perform jobs with such restrictions.

Therefore, a finding that Plaintiff could work under his RFC is not supported by substantial evidence.

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Since the claimant has non-exertional impairments, and with those non-exertional impairments the VE testified that there were no jobs Plaintiff could perform, remand is not an appropriate remedy. Moreover, proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's credible assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's physicians, proof of disability is overwhelming.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that plaintiff was not entitled to a period of disability and disability income benefits begininning on February 25, 2005, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date: July 14, 2009            s/ Timothy S. Black
                               Timothy S. Black
                               United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RANDALL MARTIN, | : | Case No. 1:08-cv-301 |
| | : | |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **10 DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **13 DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **10 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).